UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

DeCARLA NETTERVILLE                  CIVIL ACTION NO. 15-cv-1832

VERSUS                                JUDGE HICKS

COMMONWEALTH LAND TITLE       MAGISTRATE JUDGE HORNSBY
INSURANCE CO., ET AL

## REPORT AND RECOMMENDATION

**Introduction**

Plaintiff, DeCarla Netterville, filed this action against the United States (the "Government") and others alleging that the Government improperly and illegally acquired a Warranty Easement Deed over a portion of Plaintiff's property. Plaintiff seeks to have her property released from the Government's easement. Plaintiff also seeks damages, including lost income due to restrictions on growing crops contained within the Warranty Easement Deed.

Before the court is the Government's Motion to Dismiss for Lack of Subject Matter Jurisdiction. Doc. 50. The Government argues that (1) Plaintiff's exclusive remedy for this dispute is a Quiet Title Act ("QTA") claim and (2) this court lacks jurisdiction over Plaintiff's QTA claim because Plaintiff did not bring the action within the QTA's 12-year statute of limitations. For the reasons that follow, it is recommended that the Government's motion be granted, and that Plaintiff's claims against the Government be dismissed for lack of subject matter jurisdiction.

**Background and Procedural History**

Plaintiff alleges that, on or about April 1, 1997, a Warranty Easement Deed (the "Deed") was executed between James W. Davis, Plaintiff's father, and the Government under the Wetlands Reserve Program. Doc. 50, Ex. 2. In the Deed, Mr. Davis purported to permanently encumber 670.3 acres in favor of the Government in exchange for $422,300. Doc. 1, ¶ 4.

Plaintiff contends that Mr. Davis was not the rightful owner of a "substantial portion" of that property, which was owned instead by the Alvern Adams Davis Trust ("the AAD Trust"). Plaintiff was the sole principal beneficiary of the AAD Trust. Doc. 1, ¶ 6. Upon the death of her father, the AAD Trust terminated, and Plaintiff became the owner of the Trust's assets. Doc. 1, ¶ 6. Plaintiff contends that any encumbrance placed upon the real property formerly contained within the Trust is "absolutely null and void." Doc. 1, ¶ 7.

Plaintiff alleges that she first learned of the "fraudulent and erroneous encumbrance/sale" in September 2014 when her husband learned that the property had been placed in the Wetlands Reserve Program by her father. Doc. 1, ¶ 10.

The first cause of action asserted by Plaintiff is against Commonwealth Land Title Insurance Company ("Commonwealth") and Fidelity National Title Group ("Fidelity"). Plaintiff alleges that Commonwealth/Fidelity performed the title abstract on the subject property and provided a policy of title insurance. Plaintiff alleges that Commonwealth/Fidelity had a duty to competently abstract the property and ensure that Mr.

Davis had true and marketable title to the entire tract prior to its conveyance to the Government.  Doc. 1, ¶ 17.

Plaintiff's second cause of action is asserted against the Government.  Plaintiff alleges that the Government was notified that it had improperly and illegally acquired the easement over a portion of the property owned by Plaintiff, but the Government has failed to release the subject property from the Deed.  Plaintiff cites La. Civil Code Art. 2315, Louisiana's basic tort article, as the authority for her claims.  Doc. 1, ¶¶ 20 and 24.

The Government originally filed a motion to dismiss Plaintiff's claim under Art. 2315 because Plaintiff failed to exhaust her administrative remedies under the Federal Tort Claims Act ("FTCA").  In response, Plaintiff submitted an administrative claim to the Government, and it was denied.  Plaintiff then filed a First Supplemental Complaint (Doc. 28) to specifically assert a claim under the FTCA for the Government's continued refusal to remove the improper and unlawful encumbrance from Plaintiff's property.

Plaintiff later filed a Second Supplemental Complaint (Doc. 39) adding two additional defendants: Abstracting and Legal Research, Inc. ("Abstracting") and Lauren Gay Coleman ("Coleman").  Plaintiff alleges that Coleman acted as the settlement agent for the April 1, 1997 Warranty Easement Deed.  Doc. 39, ¶ 28.  Plaintiff alleges that Abstracting performed the title abstract for the Warranty Easement Deed.  Plaintiff alleges that Mr. Davis was not the rightful owner of a substantial portion of the property encumbered by the Warranty Easement Deed, so Coleman and Abstracting are liable to Plaintiff for damages.  Doc. 39, ¶ 31.

**The Government's Motion to Dismiss Under Rule 12(b)(1)**

The Government argues that this court lacks jurisdiction under the QTA because Plaintiff failed to bring her action within the QTA's 12 year statute of limitations. The Government also argues that the QTA is the exclusive remedy for this dispute and that Plaintiff's other claims, such as the FTCA claim, cannot be maintained.

Plaintiff argues that this court has jurisdiction under the FTCA because Plaintiff has identified an underlying state law claim (La. C.C. art. 2315). Plaintiff also argues that the QTA is not applicable because her claims against the Government do not involve the validity of the easement, but, instead, the scope of the easement. Alternatively, Plaintiff argues that she filed her complaint within the 12 year limitations period. Finally, Plaintiff argues that jurisdiction exists under 28 U.S.C. § 1331 because Plaintiff asserts the improper application of the Wetlands Reserve Program statutes.

**Rule 12(b)(1)**

A case is properly dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998); Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). In determining a Rule 12(b)(1) motion, the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. King v. United States, 728 F.3d 410, 413 (5th Cir. 2013). The burden of proof for a Rule 12(b)(1) motion to dismiss is

on the party asserting jurisdiction.  Id.  Accordingly, Plaintiff has the burden of proof that jurisdiction does, in fact, exist.

**The Scope of the Quiet Title Act**

Under the QTA, the United States may be named as a party defendant in a civil action to adjudicate a disputed title to real property in which the United States claims an interest other than a security interest or water rights.  28 U.S.C. § 2409(a).  The QTA provides the exclusive basis for jurisdiction of actions challenging whether the United States holds title to real property.  School Board of Avoyelles Parish v. United States, 647 F.3d 570, 580 (5th Cir. 2011).  Prior to the law's enactment, states and all others asserting title to land claimed by the United States had only limited means of obtaining a resolution of a title dispute.  Id. Recognizing the problems that arose from such a limitation, Congress enacted the QTA for the purpose of expressly waiving sovereign immunity to suits seeking to adjudicate disputed titles in real property.  Id.

According to the Fifth Circuit, the scope of the QTA is not limited to a dispute with the Government over fee simple title.  The legislative history of the QTA indicates that Congress intended easements to be included in the real property rights adjudicated in a quiet title action. School Board of Avoyelles Parish, supra, citing Kinscherff v. United States, 586 F.2d 159, 161 (10th Cir. 1978).  Several other courts also consider easements within the scope of the QTA.  County of Patrick, Virginia v. United States, 596 F.2d 1186, 1187 (4th Cir. 1979) (jurisdiction not questioned under the QTA where plaintiffs allege wrongful interference by the United States with their use and enjoyment of an easement); CBI

Acquisitions v. Morrisette, 2016 WL 5661759 (D. Virgin Islands) (plaintiff pleaded easement rights to a portion of government land and that the government has interfered with his easement rights).  The Tenth Circuit has held:

> The QTA is not a broad authorization to sue the government on any claim somehow relating to property; a QTA complaint must assert some cognizable 'right, title, or interest ... in the real property.' 28 U.S.C. § 2409a(d).  On the other hand, as its legislative history makes clear, the QTA applies even 'where the plaintiff claims an estate less than a fee simple ... [such as] an easement.'

McKay v. United States, 516 F.3d 848, 850 (10th Cir. 2008).

The Ninth Circuit also has held that a suit that actually challenges the federal government's title, however denominated, falls within the scope of the QTA regardless of the remedy sought.  Robinson v. United States, 586 F.3d 683, 688 (9th Cir. 2009)(disputes over the right to an easement *or the scope of an easement* fall under the QTA).  According to that court, to hold otherwise would merely allow parties to avoid the limitations of the QTA by raising contract or tort claims.  Id.

The Sixth Circuit, however, has limited the QTA to disputes only in which title itself is disputed.  Saylor v. United States, 315 F.3d 664, 670 (6th Cir. 2003).  Based on that decision, some courts have held that scope of easement claims fall outside the coverage of the QTA.  See Rodgers v. Vilsack, 2015 WL 4488078 (E.D. Mo.)(collecting cases).

The Fifth Circuit addressed the QTA most recently in Lonatro v. United States, 714 F.3d 866 (5th Cir. 2013).  The plaintiffs alleged that the Corp of Engineers did not possess a servitude over their property or, alternatively, that the servitude had been abandoned or it did not permit the type of activities the Corp was performing.  The Court found that the QTA,

by its plain language, imposes two explicit conditions on the Government's waiver of sovereign immunity: (1) The action must be one "to adjudicate a disputed title to real property, " and (2) "in which the United States claims an interest." The court reversed the district court's conclusion that the QTA provided jurisdiction over plaintiffs' claims against the Corp.

The Fifth Circuit found that the title dispute was not between plaintiffs and the United States. Rather, any liability on the part of the United States depended entirely on a determination of the validity of a servitude claimed by the Orleans Levee District. The court read the QTA as requiring that the title dispute must be between the plaintiff—an adverse claimant—and the United States. That condition was not satisfied, because the dispositive title dispute—the validity of the servitude—was a title dispute between plaintiffs and a third party, not between the plaintiffs and the United States. It is important to note that the Fifth Circuit did not find that the QTA was inapplicable because the dispute involved the validity of a servitude. Indeed, the court characterized the dispute over the validity of the servitude as a "title dispute."

Based on the foregoing, the undersigned concludes that Plaintiff's dispute with the Government over the easement falls within the scope of the QTA. Plaintiff cannot avoid the exclusive remedy of the QTA by asserting claims in negligence or by arguing that the suit only involves the scope of the easement or that she is merely attempting to "reform the deed." Doc. 58, p. 16. Plaintiff is clearly challenging the validity of the Deed which granted an easement to the Government. As set forth above, she alleges the easement is "absolutely

null and void," and she has alleged that the transaction itself was "fraudulent and erroneous." Doc. 1 ¶¶ 7, 10, and 22.  Such allegations fit perfectly within the scope of the exclusive remedy of the QTA as interpreted by the Fifth Circuit.

**The QTA Statute of Limitations**

Because the QTA is Plaintiff's exclusive remedy, the next important question is whether Plaintiff's suit is timely under the QTA.  Plaintiff alleges that she first learned about the easement in September 2014 when she tried to place her property in the "CRP" program. Doc. 1 ¶ 10.  She was told by the District Conservationist that the property had been placed in the Wetlands Reserve Project by her father many years prior.  Id.

The QTA's statute of limitations bars any action that is not commenced within 12 years from the date that Plaintiff *or her predecessor in interest* knew or should have known of the claim of the United States.  Harmon v. Broussard, 2014 WL 7335327 (W.D. La.)(Hicks, J.), citing 28 U.S.C.§ 2409a(g).  All that is required for an action to accrue is "a reasonable awareness that the government claims some interest adverse to the plaintiffs." Id. The statute of limitations manifests a condition to the Government's waiver of sovereign immunity; therefore, it must be construed strictly in favor of the Government.  Block v. North Dakota, 461 U.S. 273, 280, 287 (1983); Bank One v. United States, 157 F.3d 397, 402-403 (5th Cir. 1998).

**Plaintiff's Predecessors In Interest**

The most difficult question presented by the Government's motion is whether Plaintiff's father is her predecessor in interest for the purpose of the QTA.  If Plaintiff's

father is her predecessor in interest, then he had knowledge of the Government's easement from the moment of the creation of the easement in 1997, and Plaintiff's QTA claim is untimely.  To better understand this issue, the undersigned ordered the parties to provide supplemental briefing on whether Plaintiff inherited any part of the property directly from her father.

The documentation submitted by the parties shows that Plaintiff did not inherit her interest in the property directly from her father. Instead, all of the property covered by the Deed passed through two separate trusts.  Because of the complexity of the transactions, it is necessary to explore briefly the history of the property and those trusts.

The property at issue was once part of a single 1,024 acre tract owned by Plaintiff's father, James W. Davis, and grandmother, Alvern Adams Davis.  In her will, Plaintiff's grandmother, conveyed a 25.5% undivided interest in the 1,024 acres to one trust (the AAD Trust).  Plaintiff's father owned the remaining 74.5% undivided interest.  Plaintiff and her father were the beneficiaries of the AAD Trust.

An act of partition was executed in 1987.  Plaintiff's father received the property north of Highway 608 (Tract 1) and the AAD Trust received the property south of Highway 608 (Tract 2).  Plaintiff received full ownership of Tract 2 in 2013 pursuant to an act of transfer from the Trust following the death of her father in 2012.

The 670 acre easement created by the Deed in 1997 encumbers most of Tract 1. Plaintiff argues that the easement also extends onto Tract 2, which Plaintiff currently owns.

Tract 1 is currently owned by another trust that was set up in Plaintiff's father's will.  That trust does not terminate until 2027, at which point Plaintiff will receive a portion of Tract 1.

Plaintiff argues that the history of the ownership of the property shows that, at best, Plaintiff's father merely had an interest in the same 670 acre tract. Doc. 81, p.9.  Plaintiff argues that the shared interest terminated as a result of the 1987 partition, well before the Deed was executed by Plaintiff's father in 1997.

The undersigned finds that Plaintiff's arguments present too narrow a view of the concept of predecessor in interest for QTA purposes.  The documents show that Plaintiff's father previously owned a 74.5% interest in the entire 1,024 acre tract in indivision with the AAD trust.  He continued to own Tract 1 (north of the highway) and was a beneficiary of the AAD trust that owned Tract 2 (south of the highway) until his death, after which the trust transferred Tract 2 to Plaintiff in full ownership.  Plaintiff's father and the AAD Trust jointly held the same interest that Plaintiff currently possesses.  Accordingly, Plaintiff's predecessors in interests are both her father and the AAD trust.

**Summary and Conclusion**

Prior to the 1987 partition, Plaintiff's father owned an undivided interest in all of the property at issue.  In other words, he owned the property prior to Plaintiff and, as such, is her predecessor in interest.  Furthermore, at the time of the execution of the Warranty Easement Deed, Plaintiff's father owned Tract 1 and was an income beneficiary of the trust that owned Tract 2.

Twenty years after execution of the Deed, Plaintiff challenged the Government's title to the property.  This is precisely the type of stale challenge that Congress intended to prevent when it enacted the QTA and imposed the 12 year statute of limitations.  Plaintiff has strived mightily to avoid the QTA via her pleadings and her arguments.  But "[i]t would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading." Brown v. GSA, 425 U.S. 820, 833 (1976).

Accordingly;

IT IS RECOMMENDED that the Government's Motion to Dismiss (Doc. 50) be granted and that all claims against the Government be dismissed for lack of subject matter jurisdiction.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 11th day of October, 2017.

Mark L. Hornsby
U.S. Magistrate Judge